**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NORMA PEREZ, | ) | |
| Plaintiff, | ) | |
| | ) | No. 11 CV 1787 |
| v. | ) | Judge Blanche M. Manning |
| | ) | |
| THORNTONS, INC., | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

*"All you need is love.  But a little chocolate now and then doesn't hurt."*
-Lucy Van Pelt in *Peanuts* (by Charles Schulz)

To prepare for ghouls and goblins reaching out bags and chanting "Trick or Treat," Americans buy more chocolate during the Halloween season than during any other time of year—90 million pounds by one account.[1]  But for plaintiff Norma Perez, Halloween 2009 must not have satisfied her sweet tooth because just days later, on November 4, 2009, she purchased 80 candy bars from the convenience store she managed.  The trouble began when she performed a price override to purchase the bars not at the sales price, 2 for $2.22, but rather for 15¢ each—a retail price not seen since 1974.[2]

After her employer, defendant Thorntons, Inc., caught wind of what she had done, it terminated her.  Thorntons states that it fired Perez because she cost the company $115.20 in lost candy bar sales.  But Perez contends that she was fired because she is a Hispanic woman.  She sued Thorntons for national origin and gender discrimination.  Thorntons now seeks summary judgment on the claim against it.  For the reasons that follow, the motion for summary judgment is granted.

**BACKGROUND**

The following facts are undisputed except where noted.  Thorntons is a retailer that sells gasoline along with convenience items such as fountain drinks, groceries, and candy bars. Thorntons hired Perez in January 2005 as a customer service representative at its Store #5 in Cicero, Illinois.  One year later, the man who hired Perez, Region 7 Manager Bill Darlington,

---

[1]The Nielsen Company, Nielsen Media Alert, April 3, 2009, available at http://blog.nielsen.com/nielsenwire/wp-content/uploads/2009/04/nielsen-easterpassover-april-09. pdf (website last visited October 23, 2012).

[2]The Hershey Bar Index, available at http://www.foodtimeline.org/foodfaq5.html#candybar (website last visited October 23, 2012).

promoted her to the position of Retail Store Manager of Store #5.  In November 2008, Darlington transferred Perez to be the Retail Store Manager of Store #301 in Summit, Illinois, so that Perez would have experience managing a bigger store.

The parties do not agree on Perez's reaction to the transfer.  According to Thorntons, news of the transfer was well-received by Perez.  But according to Perez, she asked Darlington not to transfer her because Store #301's General Manager, Don Koziol, told her that he does not want to work with women.  Perez contends that Darlington responded that she must either accept the transfer or leave the company.

According to Perez, shortly after arriving at Store #301 she began to be reprimanded. The first reprimand occurred in May 2009, when Darlington wrote her up for submitting an outdated survey of gas prices at nearby competitors.  According to Thorntons, the data Perez originally submitted was obviously outdated, and when she was supposed to be out gathering fresh data, video surveillance footage showed that she had not left the premises.  Perez denies that she submitted outdated data, and contends that when Koziol failed to submit gas price surveys when due, he was never written up.

The second reprimand occurred on April 9, 2009, when she admittedly left the store two hours early without clocking out.  Perez contends she was away conducting an investigation into theft, though she does not remember where she went.  She further contends that Thorntons did not believe her claim that she was away conducting an investigation, though it did believe Koziol when he was once questioned about his conduct by a supervisor and claimed it was part of an investigation.

The events that preceded Perez's termination began in October 2009.  During that month, Thorton's offered several sales on a variety of candy bars, as detailed in an October Sales Planner distributed to its stores.  Among the items for sale were king size Nestlé candy bars, which were on sale 2 for $2.22.  During a visit to Store #301 that month, Region 7 Manager Darlington discussed with Koziol and Perez the store's noticeably low inventory of candy bars. He found out that Koziol and Perez had allowed their customer service representatives to ring up candy bars that were on sale, but to then let the customer walk out with a more expensive, non-sale candy bar, causing a loss to Thorntons.  Darlington warned Koziol and Perez that the practice violated the October Sales Planner, and warned that future violations could result in termination.  Thorntons contends that Darlington also warned Koziol and Perez to adhere to *all* of the directives in the company's sales planners, but Perez denies that Darlington discussed any issue other than the substitution of candy bars.

On November 4, 2009, the October Sales Planner was supplanted by the November Sales Planner, and on that date stores were directed to conduct a "change over," which involves rearranging how items are displayed and advertised.  Perez worked that day and spent her shift, in part, engaged in the following conduct:

— at 4:45 p.m., she purchased 25 Nestlé Crunch candy bars. The bars rang up at a price of $1.59 each, but Perez performed a manual price override, reducing the price to 15¢ each;

— at 4:45 p.m., she purchased 25 Baby Ruth candy bars. The bars rang up at a price of $1.59 each, but Perez performed a manual price override, reducing the price to 15¢ each; and

— at 7:58 p.m., she purchased 30 Butterfinger candy bars. The bars rang up at a price of $1.50 each, but Perez performed a manual price override, reducing the price to 15¢ each.

The bars that Perez purchased had been part of the 2 for $2.22 promotion that Thorntons' stores conducted as directed by the October Sales Planner. As a result of the overrides, she purchased 80 candy bars for $12.00, $115.20 less than the register price. She took the candy bars home.

Perez acknowledges that at the time of her overrides, Thorntons had a Write-Off Policy that governed the disposition of merchandise that was being discontinued or unsafe. Under that policy, store managers could write-off more than $25.00 worth of merchandise only in the presence of an auditor or with the preapproval of a Regional Manager or Category Manager.

On November 6, 2009, after reviewing surveillance video of Perez's candy bar purchases, Darlington met with Perez at Store #301, with Northern Division Human Resources Manager Lori Roberts participating in the meeting by phone. During the meeting, Darlington asked Perez to explain the price overrides. According to Thorntons, Perez admitted to Darlington that she could not explain the price overrides, had not obtained permission to perform them, and stated that Koziol had also purchased candy bars at a marked-down price. Darlington immediately suspended Perez.

Perez denies making such statements and, instead, contends that she told Darlington that she had obtained permission from Koziol to sell the candy bars for 15¢. She further contends that she did nothing wrong because the sales planner directed that the 2 for $2.22 candy bars from October be removed from store shelves for the month of November, to be returned in December when they would be sold for 25¢ each. Thorntons disputes that the candy bars were to be removed from store shelves during the month of November, citing in support the November Sales Planner directing stores to continue selling the bars 2 for $2.22. *See* November Sales Planner [60-2 at PageID #371]. It also disputes that Koziol gave Perez permission to purchase the candy bars for 15¢.

Following the meeting, Darlington told Roberts that he wanted to terminate Perez. Roberts concurred, and the two notified their superiors, Regional Vice-President Sam Picone and Executive Vice-President of Human Resources Brenda Stackhouse, of Darlington's decision to discharge Perez. On November 10, 2009, Roberts called Perez at home to deliver the news that

she had been terminated for her failure to "control cash and/or inventory" based on the unapproved override.

Perez contends that her termination was discriminatory and based on her sex and national origin because Koziol had engaged in similar conduct but was not terminated. Specifically, Perez asserts that in August 2009, Koziol used his personal credit card to pay the full retail value for a large quantity of alcohol that Koziol contended he discovered missing during a routine inventory inspection. When confronted about his large purchase of alcohol by Regional Vice President Sam Picone, Koziol stated that he did not report the missing inventory, and instead paid for it out of his own pocket, because he thought he could catch the culprit if the culprit thought the prior theft had gone undetected. Koziol received a written reprimand for falsifying a sales transaction. Perez contends he received more favorable treatment than she received because he is a white male.

On September 1, 2010, Perez cross-filed a charge of sex and national origin discrimination with the EEOC and Illinois Department of Human Rights regarding her November 10, 2009, termination.[3] On December 16, 2012, she received a right-to-sue letter, and timely filed this suit on March 15, 2011, within 90 days of receiving the right-to-sue letter.

Thorntons has filed a motion for summary judgment. In it, Thorntons argues that Perez cannot prevail on her claim of discrimination because she has presented no evidence of discrimination under the direct method of proof, and because she cannot establish a *prima facie* case or show pretext under the indirect method.

## ANALYSIS

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Moreover, a court should grant a motion for summary judgment only

---

[3] In her complaint, Perez identifies as discriminatory other conduct to which she was subjected at work. However, the only adverse employment action within the scope of her charge of discrimination, and the focus of her reply brief, is her November 10, 2009, termination. The court will likewise view the alleged adverse employment action as being her termination, though it will take into account prior alleged conduct as background evidence. *See Taylor v. Western & Southern Life Ins. Co.*, 966 F.2d 1188, 1196 (7th Cir. 1992) (court may take into account conduct outside the scope of an EEOC charge as background evidence).

when the record shows that a reasonable jury could not find for the nonmoving party. *See Valenti*, 970 F.2d at 365; *see also Anderson*, 477 U.S. at 248.

Thus, in order to withstand a motion for summary judgment, the nonmoving party must show that a dispute about a genuine issue of material fact exists. *See Anderson*, 477 U.S. at 248. The nonmoving party may not merely rest upon the allegations or details in his pleading, but instead, must set forth specific facts showing there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

## II. DIRECT METHOD OF PROOF

Under the direct method of proof, a plaintiff may establish discrimination with either direct or circumstantial evidence. *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 307 (7th Cir. 2012). Direct evidence of discrimination is evidence that, if believed by the trier of fact, establishes discrimination without reliance on inference or presumption. *Id.* Alternatively, a plaintiff can establish discrimination under the direct method with a convincing mosaic of circumstantial evidence that would allow jurors to infer intentional discrimination. *Id.*

Perez offers two pieces of evidence she contends establishes discrimination under the direct method. First, she relies on evidence that Koziol, the General Manager of Store 301, told her that he does not like working with women. However, it is undisputed that the decision to terminate Perez was made by Regional Manager Darlington after consulting with Human Resources Manager Lori Roberts and notifying their superiors. Koziol was not a decision-maker, and therefore evidence of his alleged bias against women, without more, is not sufficient to establish that Perez's termination was motivated by discrimination. *See Schreiner v. Caterpillar, Inc.*, 250 F.3d 1096, 1099 (7th Cir. 2001) ("as a general principle, derogatory comments are relevant only when attributable to the person who made the adverse employment decision.").

Second, she relies on evidence that Koziol allegedly "trumped-up grounds" for her dismissal, upon which Darlington relied when terminating her. Perez argues that because (1) Darlington knew of Koziol's allegedly sexist remark but nevertheless forced her to transfer to Koziol's store, and (2) Darlington terminated her despite her claims that Koziol agreed to sell the candy bars for 15¢ each, Darlington in essence adopted Koziol's remark and acted with bias. Perez's argument relies on the "cat's paw" theory, which refers to a situation involving "the unwitting manager or supervisor who is persuaded to act upon another's illegal bias." *Palermo v. Clinton*, No. 08 CV 4623, 2011 WL 1261118, at *7 (N.D. Ill. Mar. 31, 2011) (internal quotation marks and citation omitted). To succeed under that theory, Perez must show that Koziol's alleged bias was a proximate cause of the adverse employment decision. *Id.*

Perez cannot show that Koziol's purported bias against women was the proximate cause of her termination for two reasons. First, the only evidence of Koziol's bias is a statement he made in November 2008, one year before her termination in November 2009. Because the statement was not made near the time of the adverse employment decision, the statement does

not establish proximate cause. *See Brunson v. Forest Preserve Dist. of Cook County*, No. 08 CV 2200, 2010 WL 780331, at *10 (N.D. Ill. Mar. 3, 2010) (statement made two months prior to termination was not made "contemporaneously or in connection with" the plaintiff's termination).

Second, even accepting as true Perez's contention that Koziol gave her permission to sell candy bars for 15¢ as part of a scheme to get Darlington to terminate her, she still has not established proximate cause. To begin, as discussed in the previous paragraph, Perez cannot tie the alleged scheme to Koziol's purported bias given that the allegedly biased statement occurred one year earlier. In addition, Darlington was entitled to believe Koziol over Perez, and his decision to do so was not automatically discriminatory even if it was wrong (an issue which the court need not reach). *See Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 324 (7th Cir. 2003) ("The reasons for Balderston's termination are not scrutinized as to whether they were right or wrong, but only 'whether the reason for which the [employer] discharged the [employee] was discriminatory.'") (citation omitted). Even if Darlington knew about Koziol's bias, Perez still has presented no evidence that Darlington's decision to terminate Perez was motivated by that bias rather than her violation of the Sales Planner and the Write-Off Policy. *See Wojtanek v. IAM Union Dist. 8*, No. 08 CV 3080, 2011 WL 1002847, at *6 (N.D. Ill. Mar. 17, 2011) ("there is no basis in this record for a finding that [a union official's] animus was a proximate cause, let alone the 'but for' cause in any adverse employment action."). Instead, Perez relies on sheer speculation, which is insufficient to defeat a motion for summary judgment. *See On-Site Screening, Inc. v. United States*, 687 F.3d 896, 899 (7th Cir. 2012).

Although Perez's brief identifies only Koziol's statement and his "trumped-up grounds" for dismissal as evidence establishing discrimination under the direct method, in its reply brief Thorntons explores other evidence on which Perez might rely to create a convincing mosaic of circumstantial evidence of discrimination. For the sake of completeness, the court will briefly address this other evidence.

Thorntons looks to whether Perez can establish discrimination under the direct method with statistical evidence that Perez contends shows an over-representation of women and Hispanics fired while Darlington was Regional Manager. The Seventh Circuit has cautioned that "statistics are improper vehicles to prove discrimination in disparate treatment (as opposed to disparate impact) cases." *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 349 (7th Cir. 1997). That is because "statistics can only show a relationship between an employer's decisions and the affected employees' traits; they do not show causation. . . . causation is suggested only when the other variables are shown to be insignificant." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). Thus, to create an inference of discrimination, a plaintiff must both (1) show how the statistics evidence discrimination, and (2) account for the nondiscriminatory explanations for the statistical evidence. *Id.* at 616-17.

Perez has failed to account for nondiscriminatory explanations for her evidence. For instance, to support her assertion that women and Hispanics are over-represented among the Region 7 employees that Thorntons terminated during the period June 7, 2004 through

December 31, 2009, Perez relies on Thorntons' admission that the terminated employees included 251 women and 62 Hispanics. But without knowing the ratio of male to female employees overall, or the percentage of Hispanic employees overall, it is impossible to determine whether women and Hispanics are over-represented among terminated employees. Indeed, according to Thorntons admission, 475 persons were terminated, meaning that women accounted for little more than half of those employees who were terminated. Perez has failed to account for nondiscriminatory explanations for her statistical evidence and, therefore, she has failed to create an inference of discrimination.

In summary, Perez has not presented a convincing mosaic of circumstantial evidence that the decision to terminate her was motivated by illegal bias, and therefore she has not established discrimination under the direct method of proof. The court therefore proceeds to Thorntons' argument that Perez has also failed to establish discrimination under the indirect method of proof.

## II.    INDIRECT METHOD OF PROOF

Next, Thorntons contends that it is entitled to summary judgment because Perez cannot establish discrimination under the indirect method as set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish discrimination under the indirect method, the plaintiff must first establish a *prima facie* case of discrimination. A *prima facie* case of discrimination consists of evidence that (1) the plaintiff belongs to a protected class, (2) she met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) her employer treated similarly-situated employees outside her protected class more favorably. *See Peirick v. Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 687 (7th Cir. 2007). Because Perez alleges disparate punishment, the second and fourth prongs merge and are satisfied by showing that a similarly-situated employee outside her protected class engaged in a similar infraction but was subjected to less severe punishment. *See Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 728 (7th Cir. 2004).

If Perez succeeds in establishing a *prima facie* case of discrimination, the burden then shifts to Thorntons to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See Peirick*, 510 F.3d at 687. If Thorntons succeeds, then Perez must establish that the decision-maker's legitimate, nondiscriminatory reason was merely a pretext for discrimination. *Id.*

### A.    *Prima Facie* Case

It is undisputed that Perez is in a protected class and suffered an adverse employment action, and therefore satisfies the first and third prongs. However, Thorntons contends that she cannot satisfy the merged second and fourth prongs because she has not identified a similarly-situated employee outside her protected class who engaged in a similar infraction but was subjected to less severe punishment. Perez responds that Koziol was a similarly-situated

employee who engaged in an infraction similar to hers but received only a written reprimand rather than termination.

To satisfy the similarly-situated requirement, a plaintiff must identify an employee or employees who are directly comparable to her in all material respects. *See Coleman v. Donahue*, 667 F.3d 835, 846 (7th Cir. 2012). However, the analysis calls for a "flexible, common-sense examination," and the comparators need not be identical in every conceivable way. *Id.* ("We are looking for comparators, not clones.") (internal quotation marks, alteration, and citations omitted). "All things being equal, if an employer takes an action against one employee in a protected class but not another outside that class, one can infer discrimination. . . . The 'similarly situated' prong establishes whether all things are in fact equal." *Filar v. Board of Educ. of City of Chicago*, 526 F.3d 1054, 1061 (7th Cir. 2008). The purpose of the inquiry is to "eliminate other possible explanatory variables, 'such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable'—discriminatory animus." *Coleman*, 667 F.3d at 846 (quoting *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007)).

Perez contends that Koziol was similarly-situated to her because their infractions both involved "inventory/cash control" issues. However, a closer look reveals that the infractions were dissimilar. Koziol paid full retail value for missing liquor and, while he failed to report the missing inventory, the infraction did not financially impact Thorntons. In contrast, Perez's infraction involved her own purchase for 15¢ of candy bars that, according to the November 2009 Sales Planner, were to be sold 2 for $2.22. By engaging in cash register overrides in order to purchase the bars at a steep discount, Perez enriched herself and cost her employer $115.20. Because Koziol's infraction did not financially impact Thorntons, while Perez's did, Perez has not established that she was similarly-situated to Koziol. *See Mendez v. City of Chicago*, No. 03 CV 8182, 2004 WL 2980598, at *6 (N.D. Ill. Dec. 22, 2004) (to be similarly-situated, the comparator must have "engaged in conduct substantially similar" to the plaintiff's).

Furthermore, Perez and Koziol were disciplined by different decision-makers. It is undisputed that the decision to discharge Perez was made by Darlington, while the decision to reprimand Koziol was made by Regional Vice President Sam Picone. Because Perez and Koziol were not disciplined by the same person, they are not similarly-situated. *See Ellis v. United Parcel Service, Inc.*, 523 F.3d 823, 826 (7th Cir. 2008) ("Different decisionmakers may rely on different factors when deciding whether, and how severely, to discipline an employee. . . . So, to be similarly situated, [one employee] must have been treated more favorably by the same decisionmaker that fired the [other employee].").

Accordingly, Perez has failed to establish that she was similarly-situated to Koziol, and therefore cannot satisfy the merged second and fourth prongs that require her to show that she was disciplined more harshly then a similarly-situated coworker. Accordingly, she has failed to make out a *prima facie* case of discrimination, and therefore has also failed to defeat the motion for summary judgment under the indirect method of proof.

### 2. Legitimate, Non-Discriminatory Reason for Termination & Pretext

Because establishing a *prima facie* case of discrimination is a condition precedent to proceeding under the burden-shifting method of proof under *McDonnell-Douglas*, the court need not address whether Thorntons has identified a legitimate non-discriminatory reason for terminating Perez and whether that reason was pretext. *See DeLuca v. Winer Industries, Inc.*, 53 F.3d 793, 798 (7th Cir. 1995) ("[The plaintiff's] failure to establish a *prima facie* case makes it unnecessary for us to discuss [the defendant's] reasons for terminating him or the issue of pretext."). However, for the sake of completeness the court briefly addresses those issues.

Perez violated the November Sales Planner and the Write-Off Policy by purchasing for 15¢ candy bars that she had been directed to sell 2 for $2.22. Therefore, Thorntons' decision to discipline her for violating the Sales Planner and Write-Off Policy was a legitimate, non-discriminatory reason for terminating her. *See Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 348 (7th Cir. 1997) (violation of work rules is a legitimate, nondiscriminatory reason for employee's termination).

The burden then shifts to Perez to establish that the proffered reason was pretext. To show pretext, "the plaintiff must present evidence suggesting that the employer is dissembling. . . . The question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reasons it has offered to explain the discharge." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011). In making that determination, it is not "the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie." *Ransom v. CSC Consulting, Inc.*, 217 F.3d 467, 471 (7th Cir. 2000).

Perez contends that she has established pretext with evidence that Koziol gave her permission to sell the candy bars for 15¢, but that Darlington chose to believe Koziol, who denied it, over her. Perez cannot establish pretext merely by arguing that Darlington was wrong when he chose to believe Koziol over her. *See Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 824 (7th Cir. 2006) (plaintiff must show that the employer "lied about its reasons for firing him—not that [the employer] was wrong for firing him for the reasons it gave"). Rather, she must show that Darlington relied on Koziol's denial knowing that it was false. Perez contends that she has made that showing with evidence that one year earlier, Koziol had told her that he does not like working with women. However, as discussed above, Koziol's alleged statement one year earlier is simply too far removed temporally to support any inference of discrimination either on Koziol's part, or on Darlington's part for believing Koziol over Perez. *See Brunson*, 2010 WL 780331, at *10 (statement made two months prior to termination was not made "contemporaneously or in connection with" the plaintiff's termination, and therefore does not support inference of discrimination).

Perez also contends that she established pretext with statistics that Darlington fired a disproportionate number of women and Hispanics from 2004-09. However, as explained above,

the proffered statistics merely detail the number of women and Hispanics terminated. Perez does not identify the overall number of employees or their sex or national origin. As a result, it is impossible based on the record presented to discern whether the number of terminated female and Hispanic employees is disproportionate, or to infer that their termination was the result of discrimination. *See Radue*, 219 F.3d at 616 ("statistics can only show a relationship between an employer's decisions and the affected employees' traits; they do not show causation. . . . causation is suggested only when the other variables are shown to be insignificant.").

Accordingly, Perez has failed to defeat the motion for summary judgment under the indirect method of proof for the additional reason that she has failed to establish pretext.

## CONCLUSION

For the reasons given, Thorntons' motion for summary judgment is granted, and judgment is entered in its favor and against Perez. The clerk is directed to enter judgment in favor of Thorntons, Inc. and to terminate this case from the court's docket.


ENTER:


DATE: October 23, 2012

Blanche M. Manning
United States District Judge